| | |
|---|---|
| HEATHER HARER and KEVIN HARER,<br>co-executors of the estate of<br>SAMANTHA HARER,<br><br>     Plaintiffs,<br><br>   v.<br><br>FELIPE "PHIL" FLORES,<br>TOWN OF CREST HILL, Illinois, and<br>TOWN OF CHANNAHON, Illinois,<br><br>     Defendants. | Case No. 18 CV 6822<br><br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Samantha Harer died from a gunshot. Her parents, plaintiffs Heather and Kevin Harer, allege that Felipe "Phil" Flores was the shooter and that the Town of Channahon covered it up as a suicide. The Harers, who are the co-executors of Samantha's estate, have moved for leave to file a second amended complaint in which they claim that Channahon's alleged cover-up denied them access to the courts. A pleading may be amended once as a matter of course. Fed. R. Civ. P. 15(a)(1). Further amendments, however, require the other party's consent or the court's leave. Fed. R. Civ. P. 15(a)(2). Channahon does not consent, so the Harers seek the court's leave.

A court should give leave to amend "when justice so requires." Id. Allowing the Harers to amend would not be just if their denial of access claim could not survive a motion to dismiss. Glick v. Koenig, 766 F.2d 265, 268–69 (7th Cir. 1985). Channahon opposes amendment for that reason, arguing that the Harers' proposed complaint fails to state a claim for denial of access to

the courts. The court disagrees. The Harers have stated a claim for denial of access to the courts and are thus given leave to file their second amended complaint.

## BACKGROUND

In deciding whether the Harers have stated a claim, the court takes as true the allegations in their proposed complaint. <u>Firestone Financial Corp. v. Meyer</u>, 796 F.3d 822, 826 (7th Cir. 2015). The proposed complaint alleges that Samantha Harer was shot to death by her boyfriend, Felipe "Phil" Flores. Flores, a police officer for the Town of Crest Hill, often accused Samantha of cheating on him with other police officers and routinely confiscated her cell phone to see who she was talking to. His jealousy led to Samantha's death.

On February 12, 2018, in Samantha's Town of Channahon apartment, Samantha and Flores had a fight. They slept separately that night: Samantha in her bedroom; Flores, on the couch. Flores confronted Samantha the next morning at 8:00 a.m. He had taken her cell phone and discovered text conversations with another police officer. They argued. A neighbor heard banging on the walls and a woman repeatedly yelling, "Let me go."

At 8:19 a.m., Flores called 9-1-1. He told the operator that Samantha had been shot. He said that they argued, she asked him to leave, and he left. He said that he heard her "gun rack." Then a gunshot. The door was locked, so he "busted into the bedroom." He saw her unconscious with a gunshot wound to her head and a gun laying between her legs. Flores declined the operator's suggestion to perform CPR—he said that Samantha wasn't breathing and that he could see her brain matter. Police and emergency personnel arrived. They saw a gunshot wound on Samantha's head and detected a faint pulse. Blood was splattered on the front and right sleeve of Flores's sweatshirt even though he said that he was on the other side of the locked door when he supposedly heard Samantha shoot herself. Samantha was taken to the hospital and died there.

Within an hour of the shooting, the Channahon detective in charge of investigating Samantha's death, Andrew McClellan, surveyed the scene. He went there with an evidence technician. McClellan implicitly or explicitly directed the technician to make a preliminary finding of suicide. The technician obliged. Without processing any forensic evidence and without talking to Flores or any other witness, the evidence technician concluded that the scene was consistent with a suicide.

Within 24 hours of the shooting, McClellan, joined by the Channahon Chief of Police, Shane Casey, told Samantha's parents—Heather and Kevin Harer—that Samantha died from a self-inflicted gunshot wound. Casey and McClellan did not tell the Harers that a neighbor had heard a struggle shortly before the shooting or that Flores's sweatshirt had blood splattered on it. They told the Harers that Samantha's hand was positive for gunshot residue and that Flores was negative. Those statements were false. Tests found no gunshot residue on Samantha's hands. Tests found gunshot residue on the front and cuffs of Flores's sweatshirt—and on his right hand.

The Harers sued Flores, Crest Hill, and Channahon, bringing conspiracy and excessive force claims under 42 U.S.C. § 1983 and <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978). The Harers' lawyers withdrew in November 2018. The three defendants moved to dismiss. A status hearing was scheduled for December 13, 2018. The Harers, who no longer had a lawyer, did not attend. The court scheduled another status hearing and stated that, "Plaintiffs must appear at the 1/22/2019 hearing or this case will be dismissed for want of prosecution."

On December 28, 2018, the Harers met with Casey, the police chief, and Adam Bogart, the deputy police chief. Also present were a coroner, a Will County prosecutor, and Channahon's civil counsel. The Harers were told that there was an official finding that Samantha committed suicide—the forensic evidence showed that the gunshot wound was self-inflicted. Casey and

Bogart said that Samantha's toxicology report suggested a finding of suicide. Led to believe that the official finding of suicide barred their suit, the Harers did not attend the status hearing scheduled for January 22. The court dismissed the case for want of prosecution.

The Harers later learned that the gunshot residue tests implicated Flores. And they learned that Casey and Bogart's statements about Samantha's toxicology report were false—the findings, in fact, were not consistent with suicide. The Harers retained a new lawyer, the court granted their motion to reopen, and they amended their complaint.

## **DISCUSSION**

The Harers now seek leave to amend their complaint a second time. In their proposed second amended complaint, the Harers sue: (1) Flores, for battery and intentional infliction of emotional distress; (2) the Town of Crest Hill, for concealing evidence that officers inflict sexual and domestic violence on women; and (3) the Town of Channahon and three of its employees—Shane Casey (the police chief), Adam Bogart (the deputy police chief), and Andrew McClellan (the lead detective)—for concealing evidence that Flores killed Samantha, thus denying the Harers access to the courts.

Channahon argues that the Harers' claim for denial of access to the courts could not survive a motion to dismiss. A claim survives dismissal when it is plausible. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Harers' access to the courts claim is plausible if the court, taking the facts alleged in their proposed second complaint as true, can reasonably infer that the Channahon defendants (the Town of Channahon, Casey, Bogart, and McClellan) are liable. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A person's right to access the courts must be "adequate, effective, and meaningful." Bounds v. Smith, 430 U.S. 817, 822 (1977). State actors violate the right to access when they

"hinder[] . . . efforts to pursue a nonfrivolous legal claim," causing an "actual concrete injury." May v. Sheahan, 226 F.3d 876, 883 (7th Cir. 2000). Municipalities have no duty "to provide flawless and abundant social services," Bell v. Milwaukee, 746 F.2d 1205, 1262 (7th Cir. 1984), and crime victims have no "constitutional right to have the police investigate" their cases. Rossi v. Chicago, 790 F.3d 729, 735 (7th Cir. 2015). But "municipal employees involved in the investigation of a wrong perpetrated by a co-employee under color of state law" must "not conceal the perpetration of that wrong." Bell, 746 F.2d at 1262. The right to access is "undoubtedly abridged," for example, "when police officers conceal or obscure important facts about a crime from its victims," thus "rendering hollow the right to seek redress . . . ." Vasquez v. Hernandez, 60 F.3d 325, 328 (7th Cir. 1995).

Channahon argues that the Harers must allege that they were prevented from timely suing Flores. Not so. State actors "need not literally bar the courthouse door" to violate the right to access. Bell, 746 F.2d at 1261. A violation may arise when state actors simply delay a litigant's efforts to vindicate his rights. The plaintiff in May, a pretrial detainee, stated a right to access claim when he alleged that the Cook County Sheriff's "restrictive hospital detainee policies preclude him from appearing in court, impede his access to his attorney, and prevent him from assisting in his own defense." May, 226 F.3d at 883. The plaintiff stated a claim because his complaint could "be read to allege that he ha[d] been detained longer than would otherwise be necessary if he could go to court." Id.

The Harers state a claim for denial of access to the courts. They allege that the Channahon defendants "induced Plaintiffs to abandon the lawsuit by withholding evidence that suggested Flores' culpability while emphasizing those facts that supported a finding of suicide." They also

allege that they "were led to believe that their civil case could not proceed since Samantha's death had been formally ruled a suicide." But the suicide finding allegedly was a sham because:

- McClellan directed the evidence technician to make a finding of suicide;
- McClellan and Casey failed to tell the Harers that a neighbor had heard a struggle shortly before the shooting;
- McClellan and Casey failed to tell the Harers that Flores's sweatshirt had blood splattered on it;
- McClellan and Casey falsely stated that Samantha's hand tested positive for gunshot residue;
- McClellan and Casey falsely stated that Flores tested negative for gunshot residue; and
- Casey and Bogart falsely suggested that Samantha's toxicology report was consistent with suicide.

The Harers do not allege when they learned the truth. The court nonetheless reasonably infers that the Harers did so after their suit was dismissed for want of prosecution. They could not have been "induced" to abandon their suit or been "led to believe" that their suit could not proceed if they already knew about McClellan, Casey, and Bogart's allegedly deceptive acts and false statements.

Had the Harers known the truth, they likely would have attended the status hearings scheduled for December 28, 2018, and January 22, 2019, and the court would not have dismissed their case for want of prosecution. They would not have needed to spend time and money litigating a motion to reopen the case—a motion that Channahon deemed "scurrilous" and deserving of Rule 11 sanctions. Their efforts to vindicate their rights were delayed. Time and money are "actual concrete injur[ies]," May, 226 F.3d at 883, that the Channahon defendants caused by allegedly covering up Samantha's murder. See Ryland v. Shapiro, 708 F.2d 967, 975 (5th Cir. 1983) (reversing the dismissal of a right to access claim, reasoning in part that "delay would cause stale evidence and the fading of material facts in the minds of potential witnesses,"

and could make it "more expensive to litigate" the suit), discussed in <u>Bell</u>, 746 F.2d at 1260–61 ("The [<u>Ryland</u>] court of appeals . . . [held] that the district court had failed to recognize plaintiffs' legal theory of the due process right of access to courts. . . . We agree with that holding . . . ."). "Under the generous standards applicable to a complaint reviewed on a motion to dismiss," the Harers' allegations are "sufficient to state an access to the courts claim." <u>May</u>, 226 F.3d at 883.

Channahon's cases are not on point. The plaintiffs were not deprived of meaningful access to the courts in <u>Thompson v. Boggs</u>, 33 F.3d 847, 852 (7th Cir. 1994), and <u>Rossi</u>, 790 F.3d at 735–37, because both plaintiffs were "personally involved in the incident and thus had firsthand knowledge of all the facts and circumstances" of their underlying causes of action. <u>Thompson</u>, 33 F.3d at 852. Not so for the Harers. Their daughter cannot testify from the grave.

Nor were the plaintiffs deprived of meaningful access in <u>Vasquez</u>, 60 F.3d at 326—a case decided on summary judgment. The defendant police officers covered up the circumstances of a shooting. <u>Id.</u> at 327. But the plaintiffs suffered no injury. Before they sued, they were given access to the records of a "lengthy and detailed inquiry" led by the Federal Bureau of Investigation, the Illinois State Police, and the Cook County State's Attorney's Office. <u>Id.</u> They received investigative records from "numerous interviews, [an] exhaustive examination of physical evidence, and [the] use of a sophisticated laser trajectory system designed to replicate the shooting and to locate its source." <u>Id.</u> "Armed with the information unearthed by the Task Force," the plaintiffs enjoyed "a significant advantage in a state tort action against the defendants." <u>Id.</u> at 329. The Harers had none of that. There has been no discovery, no multi-agency task force investigation, no laser-powered forensic reconstruction of the scene. There is no reason to think that the delay has been a windfall for the Harers, and Channahon offers none.

## <u>CONCLUSION</u>

Plaintiffs Heather Harer and Kevin Harer's motion (Doc. 41) for leave to file their proposed second amended complaint is granted. The Harers must file the second amended complaint on or before July 19, 2019. All defendants are directed to respond to the second amended complaint on or before August 9, 2019. The parties are directed to file a joint status report using this court's form on or before August 16, 2019. The status hearing previously set for August 14, 2019, is continued to August 27, 2019 at 9:00 a.m.

**ENTER:** **July 18, 2019**

**Robert W. Gettleman**
**United States District Judge**