IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HEATHER HARER and KEVIN HARER, co-executors of the estate of SAMANTHA HARER, <br><br> Plaintiffs, <br><br> v. <br><br> FELIPE "PHIL" FLORES, TOWN OF CREST HILL, Illinois, TOWN OF CHANNAHON, Illinois, SHANE CASEY, ADAM BOGART, and ANDREW MCCLELLAN, <br><br> Defendants. | Case No. 18 CV 6822 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Heather and Kevin Harer allege that their daughter, Samantha Harer, was killed by her boyfriend, Felipe "Phil" Flores. Flores was a police officer for the Town of Crest Hill. He allegedly shot Samantha to death in her apartment in the Town of Channahon. Channahon police officers investigated the shooting and allegedly covered it up as a suicide.

The Harers sue: (1) the Town of Crest Hill, for concealing and condoning evidence of officer misconduct; (2) the Town of Channahon and three of its employees—Shane Casey, Adam Bogart, and Andrew McClellan—for concealing evidence that Flores killed Samantha, thus denying the Harers access to the courts; and (3) Flores, for battery and intentional infliction of emotional distress. Four months ago, this court granted the Harers leave to file a second amended complaint, holding that the Harers had stated a claim for denial of access to the courts against the

Channahon defendants. Harer v. Flores, No. 18 CV 6822, 2019 WL 3231385, at *3–4 (N.D. Ill. July 18, 2019).

Crest Hill, the Channahon defendants, and Flores move to dismiss the second amended complaint. To avoid dismissal, a claim must be plausible. A claim is plausible if the court, taking the allegations as true, can reasonably infer that the defendant is liable. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Defendants' motions to dismiss are denied. The court presumes familiarity with the allegations stated in its earlier opinion, Harer, No. 18 CV 6822, 2019 WL 3231385, at *1–2, and recounts those allegations only as needed.

# 1    Crest Hill's motion to dismiss

The Harers allege that Crest Hill has a practice of concealing and condoning officer misconduct. This practice allegedly allowed Flores to kill Samantha with impunity. Crest Hill moves to dismiss, arguing that: (1) the Harers fail to state an underlying constitutional violation because Flores was not acting under color of law when he allegedly killed Samantha; and (2) the Harers fail to raise a reasonable inference that Crest Hill has a practice of concealing and condoning police misconduct. Both arguments fail. Crest Hill's motion to dismiss is denied.

## 1.1    Underlying constitutional violation

For Crest Hill to be liable, Samantha's death must have been caused by: "(1) an official policy adopted and promulgated by [Crest Hill's] officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." Thomas v. Cook County Sheriff's Department, 604 F.3d 293, 303 (7th Cir. 2010). The Harers seek to hold Crest Hill liable under option two. They allege that Crest Hill's practice of concealing and condoning officer misconduct caused Samantha's death.

Crest Hill argues that it cannot be liable because Flores was not acting under color of state law when he allegedly shot Samantha. Without state action by Flores, Crest Hill argues, there is no constitutional violation. Not so. A municipality is liable under section 1983 when "the municipality itself causes the constitutional violation." Dunn v. City of Elgin, Illinois, 347 F.3d 641, 645–46 (7th Cir. 2003). If a Crest Hill practice was the "moving force of the constitutional violation," Monell v. Dep't of Social Services of City of New York, 436 U.S. 658, 694 (1978), Crest Hill "itself is the state actor" and "supplies the 'color of law' requirement under § 1983." Gibson v. Chicago, 910 F.2d 1510, 1519 (7th Cir. 1990); see also Barrett v. Orange County Human Rights Commission, 194 F.3d 341, 350 (2d Cir. 1999) ("We agree with our sister circuits that under Monell municipal liability for constitutional injuries may be found to exist even in the absence of individual liability, at least so long as the injuries . . . are not solely attributable to the actions of named individual defendants."); Fagan v. City of Vineland, 22 F.3d 1283, 1292 (3d Cir. 1994) ("We hold that in a substantive due process case arising out of a police pursuit, an underlying constitutional tort can still exist even if no individual police officer violated the Constitution."); Fairley v. Luman, 281 F.3d 913, 917 (9th Cir. 2002) ("If a plaintiff establishes he suffered a constitutional injury by the City, the fact that individual officers are exonerated is immaterial to liability under § 1983.") (emphasis in original); Garcia v. Salt Lake County, 768 F.2d 303, 310 (10th Cir. 1985) ("Monell does not require that a jury find an individual defendant liable before it can find a local governmental body liable."); Anderson v. City of Atlanta, 778 F.2d 678, 686 (11th Cir. 1985) (Monell . . . and its progeny do not require that a jury must first find an individual defendant liable before imposing liability on local government.").

As Judge Leinenweber persuasively explains in LaPorta v. Chicago, 277 F. Supp. 3d 969 (N.D. Ill. 2017), a municipality may be liable even if its employee acted without color of law:

3

> The City's color-of-law argument dies a swift death at the hands of Gibson v. Chicago, 910 F.2d 1510, 1519 (7th Cir. 1990). In that § 1983 action, the Seventh Circuit found that a police officer on medical leave as mentally unfit for duty and in receipt of a specific order to cease using police powers was not acting under color of law when he shot the victim. It nonetheless held that the City was not entitled to summary judgment because it was the City's policy of allowing the deranged police officer to retain his service revolver and bullets that the plaintiff challenged under Monell. See, id. at 1517–20 ("Gibson contends that the City's policy of allowing a deranged police officer to retain his service revolver and bullets is the state action that deprived him of his life. Consequently, the City is not entitled to summary judgment on the ground that [the officer] did not act under color of state law.") As the Seventh Circuit noted, the officer need not have been acting under color of law at the time of the accident because, in this flavor of Monell, the "municipality itself is the state actor and its action in maintaining the alleged policy at issue supplies the 'color of law' requirement under § 1983." Id. at 1519.

Id. at 986. Recognizing Gibson's force, Crest Hill argues that it is bad law. LaPorta rightly held otherwise:

> The City characterizes Gibson as either bad law or factually distinguishable from the case at bar. But all the salient data points plot a course consistent with Gibson, declining to impose a color-of-law requirement where the municipal policy under which the official proceeded is alleged to have itself caused the injury. See, e.g., Cazares v. Frugoli, No. 13 C 5626, 2017 WL 1196978, at *13–14 (N.D. Ill. Mar. 31, 2017) (holding that Gibson precluded any color-of-law escape hatch where plaintiff claimed under Monell that the City's code of silence and failure to investigate and impose discipline for officer misconduct emboldened an off-duty officer to drive drunk in his personal car, thereby causing the injuries of victims whom he struck and killed); Almaguer v. Cook County, No. 08 C 587, 2012 WL 4498097, at *6 (N.D. Ill. Sept. 27, 2012) ("A conclusion that an individual state employee did not act under color of state law does not allow for summary judgment on a municipal liability claim."); Obrycka v. Chicago, No. 07 C 2372, 2012 WL 601810, at *6 (N.D. Ill. Feb. 23, 2012) (holding that, in a Monell claim, "the municipality itself is the state actor and its action in maintaining the alleged policy at issue supplies the 'color of law' requirement under § 1983.") (citing Gibson, 910 F.2d at 1519–20); Garcia, 2003 WL 1845397, at *2 (same).

Id. at 986 (some citations omitted). The court agrees with and sees no need to add to Judge Leinenweber's well-reasoned analysis.

### 1.2 Failure to state a Monell claim

Next, Crest Hill argues that the complaint raises no inference that Crest Hill conceals and condones officer misconduct. Not so. The Harers may plead an unconstitutional practice by "showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers." Jackson v. Marion County, 66 F.3d 151, 152 (7th Cir. 1995).

The Harers have alleged such a series of bad acts involving Flores and other Crest Hill police officers. Crest Hill allegedly:

> did nothing about a 2016 complaint that Flores raped an acquaintance, K.K., while she was asleep;
>
> did nothing about a complaint that Flores assaulted someone with his gun while on duty;
>
> did nothing about Flores's known drinking problem, which caused "a number of off-duty incidents";
>
> did nothing about a complaint from a female police officer living in a different jurisdiction that her ex-boyfriend—a Crest Hill police officer—was harassing and threatening her;
>
> did nothing about an accusation that another Crest Hill police officer sexually assaulted a woman; and
>
> covered up and condoned that sexual assault.

These allegations raise an inference that Crest Hill has a practice of concealing and condoning officer misconduct. And that alleged practice plausibly insulated Flores from professional discipline and criminal prosecution, allowing him to kill Samantha with impunity. The Harers "present a story" of indifference to or approval of officer misconduct "that holds

together," even if that story is not the truth about what "really" goes on in Crest Hill. Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010). That is enough for the Harers' Monell claim to survive Crest Hill's motion to dismiss.

Most of Crest Hill's arguments to the contrary rely on: (1) refusing to draw reasonable inferences in the Harers' favor, which the court may not do, Iqbal, 556 U.S. at 678; or (2) imposing a heightened pleading requirement, which is inapplicable to section 1983 claims, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993), and not required under the federal practice of notice pleading, see Tamayo v. Blagojevich, 526 F.3d 1074, 1082–83 (7th Cir. 2008). And although the court agrees that Flores's drinking problem, as alleged, may have had nothing to do his shooting of Samantha, Crest Hill's alleged failure to act on that drinking problem is a "bad act" supporting the inference that Crest Hill generally condones police misconduct. See Davis v. Carter, 452 F.3d 686, 695 (7th Cir. 2006) (reversing summary judgment for Cook County on a Monell claim and remanding, reasoning that the plaintiff "was not required to show that Cook County's alleged repeated pattern of delay (i.e., its alleged past 'bad acts') actually caused pain and suffering to other inmates in need of medical intervention (i.e., repeated past injuries).").

## 2    Channahon defendants' motion to dismiss

The Harers also sue the Town of Channahon and three of its employees—Shane Casey, Adam Bogart, and Andrew McClellan. Casey, Bogart, and McClellan allegedly concealed evidence that Flores killed Samantha, thus denying the Harers access to the courts. The Channahon defendants move to dismiss. They argue that: (1) the Harers fail to state access claims against the individual Channahon defendants; (2) the individual Channahon defendants are

entitled to qualified immunity; and (3) the Harers fail to state a Monell claim against the Town of Channahon. Each argument fails. The Channahon defendants' motion to dismiss is denied.

### 2.1    Failure to state a right to access claim against the individual defendants

This court previously granted the Harers leave to file a second amended complaint, holding that the Harers had stated a right to access claim. Harer, No. 18 CV 6822, 2019 WL 3231385, at *3–4. The Channahon defendants argue that: (1) the kinds of damages cognizable in access claims include neither the time nor the money that the Harers spent litigating their motion to reopen; (2) this court hypothesized injuries not alleged in the complaint; (3) the Harers fail to allege that the individual defendants were personally involved; and (4) the evidence already received by the Harers amounts to a windfall that dispels any possibility of prejudice.

**Non-cognizable injuries.** The Channahon defendants argue that the kinds of damages cognizable in an access claim include neither the time nor the money that the Harers spent litigating their motion to reopen. To state a "backward-looking" right to access claim, the Harers "must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." Christopher v. Harbury, 536 U.S. 403, 415 (2002) (discussing "forward-looking" and "backward-looking" access suits). The Channahon defendants argue that the Harers have identified no such remedy. The Harers have, after all, timely sued Crest Hill and Flores. They may yet recover the full extent of their damages.

Not so. As this court explained: "Had the Harers known the truth, they likely would have attended the status hearings scheduled for December 28, 2018, and January 22, 2019, and the court would not have dismissed their case for want of prosecution." Harer, No. 18 CV 6822, 2019 WL 3231385, at *3. Even if the Harers eventually recover damages from Crest Hill and Flores, the Harers would still have had to litigate an unnecessary motion to reopen. They would

7

still have spent time and money that they would not otherwise have needed to spend. The "ultimate object" of their access claim is "not the judgment in a further lawsuit" against Crest Hill and Flores. Harbury, 536 U.S. at 414. They instead seek a "judgment in the access claim itself"—a judgment against the Channahon defendants for the incremental costs that they imposed on the Harers, costs that the Harers had to bear only because the Channahon defendants allegedly deprived them of their right to access the courts. Id.

The Channahon defendants protest that the court "is improperly imposing a cost on a defendant for merely litigating a case in good faith . . . ." That is backwards. Taking the allegations as true, the Harers had to litigate their motion to reopen only because Channahon fooled them into dropping their suit. As the Harers rightly argue, "Channahon has not been punished for opposing Plaintiffs' Motion for Relief of Judgment, but rather, for causing it."

The Channahon defendants also argue that the Harers did not need to reopen their suit in federal court; they could have simply refiled in state court. The implication is that the Harers' costs were self-imposed and unnecessary. That is wrong—although not, as the Harers argue, because a state court suit would have been barred by claim preclusion. This court's dismissal was without prejudice; a dismissal without prejudice has no preclusive effect. See Horvath v. Apria Healthcare, LLC, No. 19 CV 4894, 2019 WL 5725378, at *2 (N.D. Ill. Nov. 5, 2019) (Gettleman, J.). Still, the Harers were entitled to choose their venue. See Van Dusen v. Barrack, 376 U.S. 612, 635 (1964) (discussing the "plaintiff's venue privilege"). The Harers might have been able to sue in state court, but they chose to sue in federal court, as was their right—and that right, as alleged in the complaint, was frustrated by the Channahon defendants.

Finally, the Channahon defendants argue that the court wrongly identified delay as a cognizable injury. The Channahon defendants ignore May v. Sheahan, 226 F.3d 876, 883 (7th Cir.

2000). The pretrial detainee in May alleged that "restrictive hospital detainee policies preclude[d] him from appearing in court, impede[d] his access to his attorney, and prevent[ed] him from assisting in his own defense." Id. The Seventh Circuit held that the detainee stated a claim, reasoning that his complaint could "be read to allege that he ha[d] been detained longer than would otherwise be necessary if he could go to court." Id. So too here. The Harers' allegations raise an inference that having had to litigate a motion to reopen delayed their suit. See also Klinger v. Chicago, No. 15-CV-1609, 2017 WL 736895, at *12 (N.D. Ill. Feb. 24, 2017) (refusing to dismiss an access claim and discussing cases in this district "uph[olding] a denial of access claim based on delay where the delay forced the plaintiff to confront burdens in the litigation she otherwise would have avoided").

**Injuries not alleged in the complaint.** The Channahon defendants also accuse this court of "go[ing] beyond the complaint's pleading and hypothesiz[ing] injuries not even claimed." That betrays a misunderstanding of basic civil procedure. The Harers allege that they "were led to believe that their civil case could not proceed since Samantha's death had been formally ruled a suicide." See Harer, No. 18 CV 6822, 2019 WL 3231385, at *3. That allegation—assuming that the Harers had to spend money litigating the motion to reopen—raises an inference that the Harers were injured. See Iqbal, 556 U.S. at 679 ("[W]hether a complaint states a plausible claim . . . requires the reviewing court to draw on its judicial experience and common sense."). The Federal Rules of Civil Procedure demand nothing more. The Harers were not obligated to explain in their complaint how the Channahon defendants' alleged acts caused damages cognizable under a right to access theory: "[I]t is manifestly inappropriate for a district court to demand that

9

complaints contain all legal elements (or factors) plus facts corresponding to each." Chapman v. Yellow Cab Cooperative, 875 F.3d 846, 848 (7th Cir. 2017).

**Lack of personal involvement.** Next, the Channahon defendants argue that the complaint fails to allege that the individual defendants personally deprived the Harers of their right to access the courts. They argue, for example, that Harers allege only that McClellan and Casey told them false statements—not <u>knowingly</u> false statements. That argument relies on refusing to draw reasonable inferences in the Harers' favor, which the court may not do. Iqbal, 556 U.S. at 678.

The Channahon defendants also repeat their argument that so long as the Harers could timely sue Flores, the Harers were not deprived of access. "[T]here is no allegation," the defendants argue, that Casey and Bogart's alleged lies about the toxicology report "caused Plaintiffs to be foreclosed from bringing the underlying claim against Flores." That argument is wrong for the reasons discussed in this opinion and in this court's earlier opinion. "State actors 'need not literally bar the courthouse door' to violate the right to access." Harer, No. 18 CV 6822, 2019 WL 3231385, at *3, quoting Bell v. Milwaukee, 746 F.2d 1205, 1261 (7th Cir. 1984).

**Evidentiary windfall.** Finally, the Channahon defendants argue that they have given the Harers extensive investigative records like those in Vasquez v. Hernandez, 60 F.3d 325, 328 (7th Cir. 1995)—a case decided not on the pleadings, but on summary judgment. The Channahon defendants are wrong. The plaintiffs in Vasquez received far more:

> They were given access to the records of a lengthy and detailed inquiry led by the Federal Bureau of Investigation, the Illinois State Police, and the Cook County State's Attorney's Office. They received investigative records from numerous interviews, an exhaustive examination of physical evidence, and the use of a sophisticated laser trajectory system designed to replicate the shooting and to locate its source. Armed with the information unearthed by the Task Force, the plaintiffs enjoyed a significant advantage in a state tort action against the defendants.

Harer, No. 18 CV 6822, 2019 WL 3231385, at *4 (quotation marks, citations, and alterations omitted), discussing Vasquez, 60 F.3d at 326–27, 329. As this court held, "The Harers had none of that. There has been no discovery, no multi-agency task force investigation, no laser-powered forensic reconstruction of the scene." Harer, No. 18 CV 6822, 2019 WL 3231385, at *4. Drawing reasonable inferences in favor of the Harers, none of the evidence given to them matches the "exhaustive" evidence given to the Vasquez plaintiffs. The Channahon defendants should stop wasting private and judicial resources by repeating arguments that this court has already rejected and start litigating this case on the merits.

### 2.2 Qualified immunity for the individual defendants

Next, the individual Channahon defendants—Shane Casey (the police chief), Adam Bogart (the deputy police chief), and Andrew McClellan (the lead detective)—argue that they are entitled to qualified immunity. The individual defendants are immune from suit unless the Harers' right to access the courts was clearly established at the time of the violation. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The right must be framed in "the specific context of the case, not as a broad general proposition," Saucier v. Katz, 533 U.S. 194, 201 (2001), and its "contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (citation and quotation marks omitted). A right can be clearly established without a case directly on point: "[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question," thus giving the individual defendants "fair warning" that their acts were unconstitutional. Id. at 741 (citation and quotation marks omitted).

The individual defendants are not entitled to qualified immunity. When they allegedly concealed the truth about Samantha's death in 2018, they had fair warning that lying, misleading, and destroying evidence to shield a co-employee from liability would subject them to liability.

**Clearly established law.** In 2018, it was clearly established that "municipal employees involved in the investigation of a wrong perpetrated by a co-employee under color of state law" must "not conceal the perpetration of that wrong." Bell, 746 F.2d at 1262 (7th Cir. 1984) (affirming judgments against a detective, a police officer, and a police chief for "intentionally l[ying] and conceal[ing] the true facts" about a police shooting and for giving "explanation[s] more favorable to the police department" despite knowing about "glaring inconsistencies and conflicts" in the officer's account).

It was also clearly established that the right to access is "undoubtedly abridged" when police officers "obscure important facts about a crime from its victims," thus "rendering hollow the right to seek redress . . . ." Vasquez, 60 F.3d at 328 (7th Cir. 1995) (affirming judgments against the victims of a police shooting and reasoning that the officers' attempted "cover-up," although "deplorable," failed to reduce the potential value of a tort suit in state court). No affirmative falsehood is needed. It was clearly established that misleading, material omissions are enough. See Stone v. Chicago, 738 F.2d 896, 899–900 (7th Cir. 1984) (affirming judgments against a sergeant and a police officer for submitting "a report omit[ing] all reference to the involvement of the [co-defendants'] patrol car," which had hit a bicyclist).

Finally, it was clearly established that police officers may not destroy evidence to "deprive[ ] the plaintiff of essential proof." Harrell v. Cook, 169 F.3d 428, 432 (7th Cir. 1999) (reversing the denial of qualified immunity and holding that although the alleged destruction of

evidence by police officers violated a theft victim's right to access, that right had not yet been clearly established in 1995).

**The individual defendants' alleged acts.** In their complaint, the Harers allege that:

> Casey, Bogart, and McClellan intentionally failed to preserve physical evidence, including DNA, fingerprints, and Samantha's bedroom door;
>
> McClellan directed an evidence technician to make a finding of suicide;
>
> McClellan falsely stated to an Illinois State Police forensic expert that Flores had aided Samantha to explain the blood on Flores' sweatshirt;
>
> Casey, Bogart, and McClellan refused to confront Flores with evidence that contradicted his account of the shooting, including evidence that he had blood splatter on his sweatshirt;
>
> Casey and McClellan did not tell the Harers that a neighbor had heard a struggle shortly before the shooting;
>
> Casey and Bogart falsely stated to the Harers that Samantha's toxicology report suggested a finding of suicide; and
>
> Casey and McClellan falsely stated to the Harers that Samantha's hand was positive for gunshot residue and that Flores's hand was negative.

If Casey, Bogart, and McClellan performed these acts, they violated clearly established law. See Harrell, 169 F.3d at 432 (7th Cir. 1999) (destruction of evidence); Bell, 746 F.2d at 1262 (7th Cir. 1984) (false statements); Stone, 738 F.2d at 899–900 (7th Cir. 1984) (material, misleading omissions).

The Channahon defendants' arguments to the contrary are meritless. They argue, for example, that no clearly established law prevented police officers from "presenting evidence in the light most favorable to the municipality." That is an absurd framing of the Harers' allegations.

The Harers allege not that the individual defendants played spin doctor, but that the individual defendants lied to them and directed a sham investigation designed to exonerate Flores.

The Channahon defendants also argue that a right cannot be clearly established without a precedent directly on point. They argue, for example, that "there is not a constitutional right that is clearly established that prevents a police officer from implicitly or explicitly directing an evidence technician to make a 'preliminary' finding of any sort." As this court has held before, that "argument misconstrues qualified immunity doctrine." Dobbey v. Jeffreys, No. 19 CV 3272, 2019 WL 4958217, at *4 (N.D. Ill. Oct. 8, 2019) (Gettleman, J.). "A police officer who shoots an unresisting, handcuffed arrestee in the back is not entitled to qualified immunity, even if no judicial opinion forbade that officer from doing so using a black Smith & Wesson M&P 9mm on State Street at 1:03 a.m., under the light of a full moon." Id.; see Hope, 536 U.S. at 741.

### 2.3 Failure to state a Monell claim against the Town of Channahon

Finally, the Channahon defendants argue that the Harers fail to state a Monell claim against the Town of Channahon. For Channahon to be liable, the alleged denial of access must have been caused by: (1) an official policy; (2) a widespread and well-settled practice or custom; or (3) an official with final policy-making authority. Thomas, 604 F.3d at 303 (7th Cir. 2010).

The Harers state a Monell claim under option three. Whether an official has final policy-making authority depends on state law. Pembaur v. Cincinnati, 475 U.S. 469, 483 (1986). Under state law, the Channahon Chief of Police has final policy-making authority. According to Channahon's municipal code, the Chief of Police is "the chief executive officer of the Police Department." Code of Channahon, Illinois, §35.09(B)(1), http://library.amlegal.com/nxt/gateway.dll/Illinois/channaho/villageofchannahonillinoiscodeofordinanc?f=templates$fn=default.htm$3.0$vid=amlegal:channahon_il. The Chief has the duty to "direct, manage,

14

supervise and control all activities and officers and employees of the Police Department." Id. The Chief also has the duty to "prescribe and enforce such rules, regulations, orders, instructions and directives as may be necessary and convenient to carry out the provisions of the ordinances of the village and the laws of the state and the United States." Code of Channahon, Illinois, § 35.09(B)(3).

These duties give the Chief of Police final policy-making authority over officers and crime investigations. If, as the Harers allege, Channahon's Chief of Police—Shane Casey—led Bogart and McClellan in an investigation designed to conceal the truth about Samantha's death, Casey deprived the Harers of their right to access the courts. Because Casey had final policy-making authority to lead that investigation, his alleged acts—if proven—would subject the Town of Channahon to Monell liability.

### 3   Flores's motion to dismiss

The remaining defendant is Flores. The Harers sue him under state law for battery and intentional infliction of emotional distress. The court has supplemental jurisdiction over those claims. 28 U.S.C. § 1367(a). If this court were to dismiss the federal claims against the other defendants, Flores argues, the court should decline to exercise supplemental jurisdiction over the state law claims against him. See 28 U.S.C. § 1367(c). As discussed, the federal claims against Crest Hill and the Channahon defendants survive. Flores's motion to dismiss is thus denied.

## CONCLUSION

The court denies the motions to dismiss filed by: (1) defendant Town of Crest Hill (Doc. 48); (2) defendants Town of Channahon, Shane Casey, Adam Bogart, and Andrew McClellan (Doc. 55); and (3) defendant Felipe "Phil" Flores (Doc. 50). Defendants are directed to answer the second amended complaint on or before December 5, 2019. The parties are directed

to file a joint status report using this court's form on or before December 10, 2019. This matter is set for a report on status on December 17, 2019, at 9:00 a.m.

**ENTER:** November 14, 2019

_____
**Robert W. Gettleman
United States District Judge**